# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WILMA MCDANIEL,**

**Plaintiff,**

-vs-                                                                    Case No.  6:06-cv-784-Orl-DAB

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for Social Security disability insurance benefits and Supplemental Security Income.  For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

### PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for a period of disability, disability insurance benefits and Supplemental Security Income on June 5, 2003, alleging a disability onset date of March 27, 2001 (R. 55-57, 291-92).  Plaintiff's applications were denied initially and upon reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") (R. 36, 303-21).  On March 3, 2006, the ALJ issued an unfavorable decision denying Plaintiff's claim (R. 12-19).  The Appeals Council denied Plaintiff's Request for Review, making the ALJ's decision the final decision of the Commissioner (R. 5-7).  Plaintiff, appearing *pro se*, timely filed this action for review (Doc. No. 1).  The parties have filed briefs and the matter is now ripe for consideration.

### NATURE OF CLAIMED DISABILITY

Plaintiff alleges that she is disabled due to "Lupus, type 2 Diabetes, mixed connective tissue disorder, 2 stomach and 1 left eye ulcers, stomach hernia, asthma, arthritic psoriasis, acute sleep apnea, arthritis in hands and joints," and " cramping and chronic back pain." (R. 64, 90, 97).

### Summary of Evidence Before the ALJ

Plaintiff was thirty-seven years of age at the time of the ALJ's decision, with more than a high school education and past relevant work experience as a reservationist, customer service representative, clerk for the post office and payroll/billing clerk (R. 70, 73).

As noted by the ALJ, the medical evidence includes old medical records dated prior to Plaintiff's alleged onset date of March 27, 2001.  The medical records relevant to the time period at issue include a letter dated October 12, 2000, from Plaintiff's then treating physician, Muhammed A. Khan, M.D., regarding "any restrictions secondary to [Plaintiff's] medical condition" (R. 168).  Dr. Khan noted that Plaintiff had "mixed connective tissue disease, diet-controlled diabetes, high blood pressure and arthritis," but "[a]s far as any special condition . . . such as being late or out of work for a few days when getting sick, this applies similar to any other patient or person with any medical condition; if they get sick, they may be late or out of work, but I would not recommend any special treatment based on the conditions mentioned above."  *Id.*

On January 25, 2001, Barry Decker, M.D. of the Orlando Sleep Disorders Center advised Plaintiff that she had severe sleep apnea and required an air pump machine (CPAP mask treatment) (R. 170).

On November 15, 2002, Plaintiff was admitted to the Hospital and assessed with viral syndrome, syncope due to dehydration/orthostatic hypotension, systemic lupus erythematosus (SLE),

diabetes mellitus type 2, and obstructive sleep apnea (R. 171). She was discharged on November 18, 2002. On a follow-up visit December 4, 2002, Plaintiff noted that her sleep had improved on the CPAP, and that she felt much better, more energetic since using the CPAP and beginning treatment for her diabetes (R. 173-74). On examination, Plaintiff was positive for arthralgias of the knees, ankles and shoulders, and for heartburn, but had no abdominal pain, no shortness of breath or coughing, no edema or chest pain, and no headaches (R. 173). She was noted to be obese (294 pounds), with normal gait, sensation and reflexes and "no hernias present." (R. 176).

On February 4, 2003, Plaintiff presented to the Emergency Room with thigh pain, following a fall after jumping over a ditch (R. 183-200). X-rays revealed small osseous densities suggesting previous trauma, with no other fractures or dislocations identified (R. 197). Plaintiff was assessed with thigh pain, sprain in knee and thigh contusion, and her diabetes was noted (R. 183).

On March 18, 2003, a non-examining state agency physician completed a Physical Residual Functional Capacity Assessment, opining that Plaintiff could lift 50 pounds frequently, 25 pounds occasionally; could stand/walk for six hours in an eight hour workday and sit for same; with unlimited ability to push/pull and she should avoid concentrated exposure to hazards (R. 202-209).

On December 4, 2003, Plaintiff presented to family medicine practitioner Alex Perdomo, M.D., for a consultative examination at the agency's request (R. 210-12). Plaintiff complained of diffuse muscle aches and progressive weakness and fatigue. Dr. Perdomo noted that Plaintiff "was seen walking down the hall without any difficulties and did not require an assistive device for ambulation" and "was able to get on and off the examining table without any problems" (R. 210). Her vision was 20/30, weight was 298 pounds and Plaintiff was 5' 6½" without shoes (R. 211). On examination, Plaintiff's abdomen was soft and tender, without masses; she had some pitting edema

in the lower extremities and psoriatic skin patches mostly in the area of the knees.  No joint effusion or redness was noted, but diffuse tenderness was noticed.  Range of motion of upper arms was 90 degrees bilaterally; full range of motion was noted in lower extremities, with painful hip and knee flexion.  Muscles of the back were tender, with painful range of motion but negative straight leg raise. Neurologically, Plaintiff was intact with normal coordination, station, grip strength, fine manipulation and no neurological gait deficits noted.  Impression was history of mixed connective tissue disorder; SLE; psoriasis and psoriatic arthritis; anemia by history; diabetes; hypertension; dyslipidemia; and obesity.  It was felt that Plaintiff could benefit from weight loss and general conditioning, and referral to a pain management specialist.  Opinion was that Plaintiff could perform well in a sedentary type job with two hours of standing/walking a day.  She could occasionally lift and carry 10 pounds. She should avoid sitting more than six hours in a workday and should avoid repetitive bending, squatting, kneeling.  No manipulative limitations were found and she did not require an assistive device to ambulate (R. 211-212).

On December 29, 2003, another non-examining state agency physician reviewed the record and opined that Plaintiff could lift 20 pounds occasionally and 10 frequently; could stand/walk for six hours and sit for same in a workday; and was limited in reaching overhead, with occasional postural limitations, and it was felt that Plaintiff should avoid concentrated exposure to hazards, humidity and wetness (R. 213-220).  On April 4, 2004, another non-examining state agency physician made similar conclusions, adding restrictions against concentrated exposure to extreme cold and heat (R. 221-28).

The next medical record of treatment indicates that Plaintiff presented to the Emergency Room on August 18, 2004, complaining of a rash and chest pain (R. 253).  X-rays revealed normal heart and lungs (R. 268), but her glucose level was critical at 523.  She was assessed with trichomonal vaginitis,

-4-

diabetes uncontrolled; hypertension NOS; SLE; asthma NOS; and a urinary tract infection (R. 253). Plaintiff was treated and released (R. 259). She was next treated at the Emergency Room on June 13, 2005, complaining of joint pain in her shoulder and neck pain (R. 229-48). Cervical spine x-ray was normal (R. 249). Plaintiff's glucose level was again remarkably high at 580 (R. 250). She was assessed with hyperglycemia and cervical pain, and was treated and released.

Plaintiff was treated at the Orange County Clinic from October 5, 2005 to November 9, 2005, for her diabetes and chest pain (R. 278-90). Her ECG was normal (R. 289-90). Plaintiff was assessed with morbid obesity, history of lupus, diabetes, controlled high blood pressure, psoriasis, arthritis, and sleep apnea (R. 279), and was advised to take her medication, diet, exercise and take an aspirin a day (R. 280).

Plaintiff appeared and testified at her hearing, where she was represented by a non-attorney representative (R. 303-23). Plaintiff has a driver's license but stated that she doesn't drive much (R. 310). Plaintiff stated that she has pain everyday, 24 hours a day (R. 312), she does not sleep at night (R. 314) and she cannot reach or bend (R. 315-18). She uses a cane everyday to ambulate (R. 318), and she performs no household activities at all (R. 318).

In his decision, the ALJ found that Plaintiff had the severe impairments of lupus, diabetes, obstructive sleep apnea, and obesity, but that none of the impairments or combination of impairments met or medically equaled the Listings (R. 14-15). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to lift/carry 10 pounds, stand/walk for about two hours in an eight hour workday, sit for about six hours with an option to sit/stand, and could occasionally climb, balance, stoop, kneel, crawl, and perform limited reaching, with the need to avoid concentrated exposure to extreme temperatures, wetness, humidity and hazards such as heights and moving machinery (R.

15-16).  The ALJ found that Plaintiff was capable of performing her past work as a reservationist, which did not require work-related activities precluded by her RFC (R. 18).  The ALJ then concluded that Plaintiff was not disabled within the meaning of the Social Security Act (R. 19).

### STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### ISSUES AND ANALYSIS

In her brief, Plaintiff appears to contend that the decision is not supported by substantial evidence in that: 1) she was not treated for her illnesses from 1998 to 2001 due to the complexity of her conditions and that she was first taken seriously by Dr. Carter in August of 2005 and Dr. Leedy in May 2005; 2) the Commissioner did not "investigate" the inconsistency in the judge's findings; 3) the ALJ erred in relying on the state agency non-examining doctors and on Dr. Perdomo; 4) the credibility determination was erroneous and the ALJ did not even look at her during the hearing; and 5) the ALJ erred in discrediting her pain.  While the Court understands that Plaintiff disagrees with the conclusion reached by the ALJ, the Court is not persuaded that error is evident.

**The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. Section 404.1520.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  This case was decided at step 4.

**Issue 1 - medical records from 1998 to 2001**

To the extent Plaintiff purports to rely on medical records that pre-date the alleged onset of disability, she has not shown how those records are relevant to establish disability, especially since, as pointed out by the ALJ, Plaintiff was able to work during this period of time.  To the extent the old records establish that Plaintiff had certain conditions (diabetes and SLE), the ALJ acknowledged those conditions in his decision.  Moreover, Plaintiff's treating physician in 2000 opined that she had no special restrictions due to her medical conditions (R. 168).  There is no error shown.

Plaintiff also appears to rely on records from May and August 2005 from Dr. Carter (apparently of Orange County Medical Clinic) and Dr. Leedy (affiliation unknown).  These records, however, do not appear in the record, despite the fact that Plaintiff's representative submitted other Orange County Medical Clinic records as an exhibit (R. 277) and, to the extent the records exist but were overlooked by the representative, Plaintiff had the opportunity to submit the May and August records as part of the Request to the Appeals Council for review of the hearing decision (R. 8).  While the ALJ has a duty to fully and fairly develop the record, *see Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988), even if the ALJ could anticipate that the records produced by the representative were incomplete, there is no prejudice here, because the ALJ reviewed Dr. Carter's more recent records (which are consistent with Plaintiff's description that Dr. Carter only tried to treat her diabetes) and Plaintiff testified at hearing regarding Dr. Leedy's[1] advice that she start using a cane (R. 318-9).  No error is apparent.

**Issue 2 - investigating the inconsistencies**

---

[1] The transcript spells the physician as Dr. "Lenny (Phonetic)" (R. 318).

-8-

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  As noted above, the ALJ determined this case at step 4 of the analysis.  Thus, Plaintiff, and not the ALJ, had the burden to prove her disability, which would include the duty on administrative appeal to make sufficient argument to identify alleged inconsistencies.  Plaintiff contends that these inconsistencies compel a different result.

As noted above, the question on review is whether the decision of the ALJ is supported by substantial evidence; not whether there is any evidence or argument that would lead to a different result.  The "inconsistencies" offered by Plaintiff (in essence, why would she leave a higher paying job if she was not really sick) do not detract from the evidence of record, set forth above and examined below, which supports the conclusion of the ALJ.  As such, the argument is unavailing.

**Issue 3 - reliance on the state agency physicians and the consultative examination**

Plaintiff contends that it was error to rely on the opinions of the three non-examining state agency physicians and the opinion of Dr. Perdomo in establishing her RFC.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, as noted by the ALJ, no treating physician imposed any functional limitation on Plaintiff's activities (R. 17).[2] The ALJ was well within his authority to consider this in establishing

---

[2]Indeed, the only treating physician to address the issue specifically noted *no* special restrictions were applicable due to Plaintiff's medical conditions.

-10-

Plaintiff's RFC.  By contrast, the three non-examining physicians did impose restrictions on Plaintiff's functional ability, and the ALJ made a finding that, in fact, Plaintiff was more limited than they stated (R. 18).  The ALJ placed great weight on the examining physician's opinion that Plaintiff could perform sedentary work (R. 18), finding that his opinion was consistent with the medical evidence.  This is supported by substantial evidence.  As set forth above, x-rays were all normal and Plaintiff was treated minimally and conservatively.   Dr. Perdomo's examination did not disclose disabling impairments and there is no evidence of long term hospitalization, surgery or significant office visits and specialized treatment.  Viewing the record as a whole, the ALJ did not err in his evaluation of the medical opinions.

### Issues 4 and 5 - Pain and Credibility

Plaintiff lastly takes issue with the ALJ's evaluation of her credibility and allegations of pain. The Court understands that Plaintiff feels that she is in serious pain and that she is upset that the ALJ did not appear to recognize this, but the record does not show legal error.

Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

-11-

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ applied the pain standard by finding that Plaintiff met step one, but that her statements regarding the intensity, duration and limiting effects of her symptoms were not entirely credible (and thus, by implication, Plaintiff did not meet either step two or three).  The ALJ offered several reasons for discrediting Plaintiff's allegations of disabling pain: 1) the length of time since she last worked and the lack of change in her medical condition from the time she did work; 2) the medical evidence indicating that her symptoms were largely controllable with medication; 3) the lack of any significant treatment such as lengthy hospitalizations or surgery; 4) the lack of any restrictions placed by her physicians; 5) Plaintiff's limited daily activities could not be objectively verified with any reasonable degree of certainty; 6) the relatively weak medical evidence; and 7) Plaintiff's

appearance and demeanor at the hearing (R. 16-17).  As set forth above, there is substantial evidence to support these findings and as such, the Court is compelled to affirm.

**Other arguments**

In her brief, Plaintiff contends that the decision was not correct due to a variety of other fairly vague reasons.  The Court has reviewed the papers and finds these objections to be without merit.

Plaintiff cites to complaints of headaches, blackouts and loss of feeling in her fingers, which she attributes to her conditions.  As pointed out by the Commissioner, however, she does not cite to any evidence in the medical record for these findings.  In fact, the medical evidence, as set forth above, includes findings of normal sensation, and a lack of headache.  Similarly, there is conflicting evidence with respect to Plaintiff's alleged need for a cane, as Dr. Perdomo specifically noted no gait problems and no need for an assistive device, and, although Plaintiff now alleges problems with her vision, no such problems were evident on his examination.  Conflicts in the evidence are for the ALJ to resolve.  As the record supports his findings, the Court cannot re-examine and make new findings.

Substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work as a reservationist, as she described it.  *See* R. 19, 77, 116.  Plaintiff does not appear to dispute her job description, but instead contends that she had not performed the job since 2000 and therefore, the ALJ should not have considered it.  Plaintiff is mistaken.  The regulations allow the ALJ to consider work experience that occurred within the last 15 years.  *See* 20 C.F.R. §§ 404.1565(a), 416.965(a) (we consider that your work experience applies when it was done within the last fifteen years, lasted long enough for you to learn to do it, and it was substantial gainful activity).

A final word is in order.  Plaintiff's unhappiness with the decision and her dissatisfaction with her doctors and the process is evident in her papers.  While the Court is certain that Plaintiff does,

-13-

indeed, suffer from her impairments, the nature of this suit is not to convince this Court that her pain

is "real" but to evaluate whether  the ALJ's determination of what Plaintiff could do *despite* her pain

and limitations was adequately supported by the record he had before him at the time.  For the reasons

set forth above, the Court finds that the ALJ's decision *is* supported by substantial evidence and *was*

made in accordance with appropriate legal standards.  As such, the Court can go no further, and must

affirm.

### CONCLUSION

The decision of the Commissioner is **AFFIRMED.**  The Clerk is directed to enter judgment

accordingly and to close the file.

**DONE** and **ORDERED** in Orlando, Florida on May 21, 2007.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

-14-